JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants/cross-appellees, Sprint Corporation and United Telephone Company of Ohio (collectively referred to as "Sprint" where appropriate), and defendant-appellee/cross-appellant, Continental Casualty Company ("Continental"), appeal the judgment of the Cuyahoga County Common Pleas Court that declared the respective rights and obligations between these parties under business auto and excess commercial policies issued by Continental to Sprint.
 {¶ 2} In November 1997, while acting within the course and scope of his employment with plaintiff-appellant, United Telephone Company of Ohio, a wholly-owned subsidiary of Sprint, defendant David Lamphear sustained serious injury after colliding with an uninsured motorist while Lamphear was operating a vehicle owned by his employer. Sprint had in effect two policies of insurance with Continental, a business auto policy and a commercial catastrophe liability or excess policy.
 {¶ 3} After Lamphear's claim was denied by Continental, Lamphear and his wife, Diana, brought suit against Continental in the common pleas court, seeking a declaration that they were entitled to uninsured motorist ("UIM") benefits under the Continental policies. Continental argued that the Lamphears were not entitled to these benefits because Sprint rejected UIM coverage. The trial court agreed with Continental and granted judgment in its favor. Finding Sprint's rejection of UIM benefits invalid, this court reversed and entered judgment in favor of the Lamphears. See Lamphear v. Continental Cas. Co. (May 24, 2001), Cuyahoga App. No. 78325, 2001 Ohio App. Lexis 2319.
 {¶ 4} In August 2001, Sprint filed a four-count complaint against Continental and the Lamphears. According to Sprint's complaint, Continental claims to be entitled to reimbursement under the business auto policy according to the reimbursement endorsement contained in that policy and a self-insured retention provision under the excess policy. Succinctly, the reimbursement endorsement requires reimbursement from Sprint for the first $2,000,000 of any claim paid by Continental while the self-insured retention provision obligates Sprint to pay the first $100,000 of any claim made under the excess policy. As a result of Continental's claims, Sprint sought a declaration that it was not obligated to Continental under either policy. Sprint alternatively brought claims against Continental based on estoppel, negligence and breach of contract in the event the trial court found Sprint liable. The alternative claims were based on Continental's alleged failure to properly effectuate the rejection of UIM coverage.
 {¶ 5} The trial court eventually dismissed the Lamphears as parties and Sprint and Continental thereafter both moved for partial summary judgment on Sprint's claim for declaratory judgment.[1] Finding that Sprint was not a self-insured entity or self-insured in the practical sense, the trial court opined that Sprint was not relieved of its obligation to provide UIM benefits under the Ohio Revised Code. Continuing, the court stated:
 {¶ 6} "Sprint contracted with Continental for insurance. Since Continental did not provide an appropriate legal written waiver of the UIM coverage, such coverage is imposed by the operation of law. The policies of insurance that were in place between Sprint and Continental did not provide for UIM coverage. Such coverage was imposed by operation of law. This Court will not assume and impose terms of the contract for reimbursement of the UIM claims unless the language of the contract expressly refers to such claims. The insurer must bear the risk of the language it chooses in its policies."
 {¶ 7} Declining to assume that the reimbursement provision contained in the business auto policy applied to the UIM coverage imposed by law, the court made the following declaration as pertains to the business auto policy:
 {¶ 8} "This Court declares in regard to Count One of the Plaintiff's complaint that Continental, the Defendant herein, is not entitled to reimbursement from Sprint for the first $2,000,000 of settlement that it paid to the injured party, David Lamphear[,] while operating a Sprint vehicle in the course and scope of his employment. The total settlement with Mr. Lamphear and his wife, Diana, totaled $2,250,000. As the UIM coverage was imposed by operation of law, its limits of liability are equivalent to the underlying limits of liability of the policy of $2,000,000. Continental must bear the risk of loss for the first $2,000,000."
 {¶ 9} As pertains to the excess policy, the court made the following declaration:
 {¶ 10} "As the total settlement exceeded the UIM coverage limits imposed by operation of law, the remaining $250,000 is subject to the excess policy. There is a $100,000 self-insured retention obligation on the part of Sprint. Therefore, Sprint owes the next $100,000 as [a] way of reimbursement to Continental for payments made over $2,000,000. Continental is not entitled to any further reimbursement from Sprint as a result of a payment to the Lamphears. * * *"
 {¶ 11} Both Sprint and Continental appealed this order. Because it was not a final order capable of immediate review by this court, we dismissed the appeal. See Sprint Corp. v.Continental Cas. Co., Cuyahoga App. Nos. 83468 83475, 2003-Ohio-2350. We reinstated the appeal, however, upon the trial court's nunc pro tunc order finding "no just reason for delay."
 {¶ 12} In this reinstated appeal, Sprint challenges the trial court's declaration that it must reimburse Continental $100,000 under the self-insured retention provision of the Continental excess policy. Continental, on cross-appeal, challenges the trial court's declaration that Sprint was not required to reimburse Continental under the business auto policy.
 {¶ 13} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus; see, also, Civ.R. 56(C).
 {¶ 14} Insurance contracts must be construed in accordance with the same rules of construction as other written contracts. See Hybud Equip. Corp. v. Sphere Drake Ins. Co. (1992),64 Ohio St.3d 657, 665. As such, if the language of the policy is clear and unambiguous, the words and phrases used therein must be given their natural and commonly accepted meaning consistent with the intent of the parties. See Tomlinson v. Skolnik (1989),44 Ohio St.3d 11, 12; see, also, Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at ¶¶ 11-12. On the contrary, any ambiguity in the contract language must be strictly construed against the insurer and liberally in favor of the insured. Id.; see, also, Clark v. Scarpelli (2001), 91 Ohio St.3d 271, 282.
 {¶ 15} The Reimbursement Endorsement of the business auto policy provides, in relevant part:
 {¶ 16} "The Company [Continental] may pay any part or all of the reimbursement amount to effect settlement of any claim [or] suit. Upon notification of the action taken, the named insured shall promptly reimburse [Continental] for such part of the reimbursement amount as has been paid by [Continental]."
 {¶ 17} Continental argues that the trial court erred when it determined that Continental was not entitled to reimbursement from Sprint under this endorsement, while Sprint maintains that the endorsement does not apply when UIM coverage is imposed by operation of law.
 {¶ 18} Relying on German v. Therm-O-Disc (Mar. 28, 2002), 5th Dist. No. 01CA51-2, 2002 Ohio App. Lexis 1844, reversed on other grounds (2003), 100 Ohio St.3d 302, 2003-Ohio-5888, at ¶44, Sprint asserts that the endorsement is a "restriction" upon coverage imposed by law, coverage it did not want.
 {¶ 19} "In Scott-Pontzer, the Ohio Supreme Court determined `any language in the Liberty Mutual Umbrella Policy restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage' when such coverage arises by operation of law. * * * Based upon the rational set forth in Scott-Pontzer, we find the deductible provision at issue herein is a restriction on the commercial general liability coverage only, and does not extend to UIM coverage arising by operation of law. Accordingly, we find the UIM coverage is not subject to any deductible amount." Id. at *12-13.
 {¶ 20} Other courts have likewise found restrictive provisions contained elsewhere in a policy to be inapplicable to coverage imposed by operation of law. As explained by Tenth Appellate District in Demetry v. Kim (1991),72 Ohio App.3d 692, a restrictive provision "cannot be impressed upon the underinsured coverage implied by law." Id. at 698. The Demetry
court rationalized that the parties "never intended underinsured coverage to be provided by the policy" and, as such, "there could be no negotiated exclusions intended to be implied to the underinsured coverage." Id.
 {¶ 21} Distinguishing restrictive provisions that are exclusions to coverage from those provisions that are conditions precedent, the Second Appellate District in Luckenbill v.Midwestern Indemn. Co. (2001), 143 Ohio App.3d 501, found a condition precedent, unlike an exclusion, applicable to coverage imposed by law. The Luckenbill court reasoned:
 {¶ 22} "The policy provision here at issue, the notice provision, is a general condition imposed upon the policy with respect to any liability coverage it provides. UM/UIM coverage is liability coverage, albeit for the benefit of the insured with respect to the liability of a tortfeasor who is uninsured or underinsured. When that coverage is imposed by law, as in * * *Demetry, it may not be diminished in its scope by circumstantial exclusions [that] are matters the parties never contemplated. However, the right to coverage may be conditioned on compliance with provisions the parties did contemplate. Here, they agreed to condition liability coverage on the insured's compliance with certain notice requirements. [The insured's] failure to comply with those requirements likewise terminated the UM/UIM liability coverage involved, notwithstanding that it was imposed by law and not by agreement." Id. at 507; accord Lepleyv. Hartford Acc. and Indemn. Co. (C.A.6, 2003), 334 F.3d 544,548-549 ("Although the case law is not entirely consistent, the weight of authority from the appellate courts in Ohio holds that conditions precedent apply even when UM/UIM coverage arises by operation of law.").
 {¶ 23} Notwithstanding this distinction in the case law, we cannot classify the Reimbursement Endorsement at issue in this case as either a condition precedent or an exclusion. We consider it, nonetheless, to be a restriction on coverage because of the nature of reimbursement. As a restriction, we cannot say that Sprint envisioned its enforcement upon a claim for coverage it expressly intended to reject. Unlike a condition precedent that is within the contemplation of the parties, the Reimbursement Endorsement at issue here was not within the parties' contemplation on a claim for UIM benefits. It is undisputed that the parties did not intend UIM coverage to be part of the Continental policy. Sprint cannot now be held liable to reimburse Continental on a claim for which it had no intention of accepting risk.[2]
 {¶ 24} Continental's sole assignment of error is not well taken and is overruled. The judgment of the trial court is affirmed as to its declaration that Continental is not entitled to reimbursement from Sprint under the Reimbursement Endorsement of the Continental policy.
 Self-Insured Retention {¶ 25} The excess policy issued by Continental to Sprint contains a $9,000,000 Limits of Insurance with a Self-Insured Retention of $100,000 for each occurrence. Sprint argues that it is self-insured "in the practical sense" and is, therefore, exempt from liability for UIM coverage, including the self-insured retention. Continental disagrees.
 {¶ 26} Self-insurance is defined as "a plan under which a business sets aside money to cover any loss." Black's Law Dictionary (7 Ed. 1999) 807. "Self-insurance is not insurance; it is the antithesis of insurance." Physicians Ins. Co. of Ohio v.Grandview Hosp. and Medical Ctr. (1988) 44 Ohio App.3d 157, 158. Although insurance shifts the risk of loss from the insured to the insurer, a self-insurer, on the other hand, retains the risk of loss imposed by law or contract. Id; see, also, Jennings v.Dayton (1996), 114 Ohio App.3d 144, 148.
 {¶ 27} In general, self-insured entities are not subject to the requirements imposed by R.C. 3937.18. Grange Mut. Cas. Co.v. Refiners Transport Terminal Corp. (1986), 21 Ohio St.3d 47,49-50. In determining whether an entity is self-insured, courts look at who bears the risk of loss. Dalton v. Wilson, 10th
Dist. No. 01AP-1014, 2002-Ohio-4015, at ¶ 35. "While insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting." Jennings v. Dayton
(1996), 114 Ohio App.3d 144, 148. Rather, "self-insurance `is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.'" Physicians Ins. Co. of Ohio v.Grandview Hosp. Med. Ctr., 44 Ohio App. 3d at 158.
 {¶ 28} The statute has likewise been held inapplicable to entities that can be viewed as being self-insured "in a practical sense." See Lafferty v. Reliance Ins. Co. (S.D.Ohio 2000),109 F.Supp.2d 837, 841; McCollum v. Continental Ins. Co. (Apr. 9, 1993), 6th Dist. No. L-92-141, 1993 Ohio App. Lexis 2022; cf.Dalton v. Wilson, 10th Dist. No. 01AP-1014, 2002-Ohio-4015, at ¶ 38 (declining to follow Lafferty and McCollum because those cases "extend Grange well beyond its holding").
 {¶ 29} Despite a difference of opinion on this issue in this court,[3] this author addressed this issue in Franklin v.Am. Mfrs. Mut. Ins. Co., Cuyahoga App. No. 81197, 2003-Ohio-1340, reversed on other grounds In re Uninsured Undersinsured Motorist Coverage Cases, 100 Ohio St.3d 302,2003-Ohio-5888. In that case, we declined to find an employer to be self-insured so as to exempt it from liability for UIM coverage when that employer failed to comply with the requirements set forth in R.C. Chapter 4509. Id. at ¶ 33; see, also, Gilchrist v. Gonsor, Cuyahoga App. No. 80944, 2003-Ohio-2297, discretionary appeal allowed (2003),100 Ohio St.3d 1409.
 {¶ 30} These statutory requirements are set forth in R.C. Chapter 4509, which provides, in relevant part, that a certificate of self-insurance shall issue upon application by one who is "of sufficient financial ability to pay judgments." R.C.4509.72(B). Proof of financial responsibility may be given by filing a surety bond as provided in R.C. 4509.59 or by the issuance of a certificate of self-insurance as provided in R.C.4509.72. See R.C. 4509.45(C) and (E).
 {¶ 31} Nothing in the record indicates that Sprint has satisfied these statutory requirements. We, therefore, decline to find that it is self-insured for purposes of avoiding liability for uninsured motorist coverage, including the self-insured retention under the excess policy.
 {¶ 32} Notwithstanding this conclusion, we find that Sprint is not liable for payment of the self-insured retention based on the language in the policy. The policy does not define "self-insured retention," but it is indirectly referenced in Section III of the policy, which addresses the Retained Limit and Limits of Insurance. This section provides, in relevant part:
 {¶ 33} "When an `underlying insurance' aggregate limit has been exhausted by the payment of `net loss[,]' the insurance afforded by this Coverage Part will drop down and apply in excess of that exhausted aggregate limit. Any `net loss' payment we make in excess of an exhausted aggregate limit is included within, and is not in addition to, the Limits of Insurance for this Coverage Part.
 {¶ 34} "In any instance other than the above, our liability for `injury' to which this insurance applies shall be only for the `net loss' in excess of the applicable `retained limit[.]'
 {¶ 35} Here, the "underlying insurance aggregate limit" is the business auto policy limit referenced on the declarations page of the excess policy, which is $2,000,000.00. "Net loss" is defined by the policy as the "sums actually paid * * * in cash due to a claim for which the insured is liable * * * by a settlement to which we agreed * * *." Continental negotiated the $2,250,000 settlement with the Lamphears, David Lamphear being an employee of its insured, Sprint. Because this settlement exhausted the $2,000,000 underlying aggregate limit, the excess policy "dropped down" to cover the excess amount.
 {¶ 36} Continental, nonetheless, relies on the paragraph immediately following this policy provision as support for its argument that Sprint is liable for the self-insured retention. This provision states:
 {¶ 37} "In any instance other than the above, our liability for `injury' to which this insurance applies shall be only for the `net loss' in excess of the applicable `retained limit[.]'" (Emphasis added.)
 {¶ 38} This provision, however, is not triggered if the preceding paragraph applies, which it did in this case. Consequently, Continental's argument is unavailing.[4]
 {¶ 39} Sprint's assignment of error is well taken and is sustained. The judgment of the trial court is reversed as to its declaration that Sprint is liable to Continental for payment of the $100,000 self-insured retention.
Judgment affirmed in part and reversed in part.
It is ordered that appellee and appellant equally share costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Calabrese, Jr., J., Concur.
[1] During the course of this litigation, the Lamphears settled their claims with Continental for $2,250,000.00.
[2] Continental alternatively argues that Sprint agreed to provide UIM coverage in those states where there could be no rejection. Be that as it may, Ohio permitted Sprint to reject UIM coverage. That the rejection was not effectuated in accordance with Ohio law did not convert Ohio into a state that did not permit rejection so as to trigger the endorsement containing Sprint's agreement to provide coverage.
[3] See, e.g., Straubhaar v. Cigna Prop. Cas. Co.,
Cuyahoga App. No. 81115, 2002-Ohio-4791 (finding entity self-insured in the practical sense despite lack of compliance with statutory requirements); see, also, Landers v. LucentTechnologies, Inc., Cuyahoga App. Nos. 81506 81531, 2003-Ohio-3657.
[4] We note parenthetically that even if this paragraph applied, "retained limit" is defined as the greater of
underlying insurance limits of insurance or the self-insured retention. Since the $2,000,000 underlying insurance limit is greater than the $100,000 self-insured retention, Continental is liable for excess above $2,000,000 under the excess policy. It appears that this provision is applicable in those situations where there is a gap in coverage, i.e., when the underlying insurance does not provide coverage but the excess policy, as an umbrella policy, "fills the gap" in coverage, less the self-insured retention.